Argued and submitted November 19, 1990, reversed and remanded for new trial February 27, reconsideration denied August 14, petition for review denied October 29, 1991 (312 Or 235)

## STATE OF OREGON,
*Respondent,*

*v.*

## TODD LEE MORGAN,
*Appellant.*

(C8907-33587; CA A63453)

806 P2d 713

Martin W. Reeves, Portland, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Defendant appeals his conviction for being an ex-convict in possession of a firearm. ORS 166.270. He assigns error to the trial court's denial of his motion to suppress tangible and testimonial evidence. He argues that, because he was arrested without probable cause, the evidence was the fruit of an unlawful arrest and should have been suppressed. We reverse.

Officer Olsen was the only witness at the hearing on the motion to suppress. He testified that, on July 12, 1989, the police received a tip from an identified informer that "there was possibly a person taking a person from a car or putting a person into a car at gunpoint at the east end of the Hawthorne bridge." The car was described as a yellow Capri with no rear license plate, and the persons were described only as a male and a female. The police stopped the vehicle a minute or two after receiving the report and, with guns drawn, directed the occupants, two women and defendant, to leave the car one at a time. As they got out, each was directed to raise their hands, turn around and walk over to the officers. The two women got out first and were taken into custody, frisked, handcuffed and placed in separate patrol cars. Defendant left the car last and also was taken into custody, frisked, handcuffed and placed in Olsen's patrol car. The frisk revealed no gun, bullets or anything associated with the use of a gun. During that time, other police officers searched defendant's car. No gun was found, but some bullets were found inside a zippered eyeglass case in the car.

After defendant was taken into custody and placed in Olsen's car, he was advised of his *Miranda*-type rights. Olsen then told him that the police had received a report that he had taken a person from a car at gunpoint. Defendant responded that he had not taken anyone from a car at gunpoint, but had gotten out of the car to test a gun by firing a round into the river. Olsen asked him where the gun was, and defendant described its exact location in the car. Olsen looked there and found the gun.

Olsen testified that defendant was polite, cooperative and did not appear to be under the influence of alcohol or drugs. He said that, to his knowledge, neither of the women made any complaint about kidnapping or any other activity by

defendant. He also said that, when defendant was handcuffed and placed in Olsen's car, he was still investigating and did not believe that he had probable cause for an arrest.

The trial court denied defendant's motion to suppress his statements and the evidence obtained as a result of those statements. Defendant then waived his right to a jury trial and stipulated to admission of certified documents showing his prior conviction and of the testimony received in the hearing on the motion to suppress. The trial court found defendant guilty.

The state argues that defendant was only stopped and not arrested and that, if it was an arrest, the police had probable cause to believe that defendant had committed an offense. Defendant concedes that the police had reasonable suspicion to stop him but argues that he was arrested when the police handcuffed him and placed him in the patrol car and that, because the police did not have probable cause to arrest him at that point, his arrest was unlawful.

■ Under ORS 133.005(1), "arrest" means "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." A stop authorized by ORS 131.605 to ORS 131.625 is not an arrest. ORS 133.005(1). However, even when a stop is authorized, a restraint that goes beyond the scope of a stop will result in an illegal arrest, if it is not based on probable cause. *Dunaway v. New York,* 442 US 200, 99 S Ct 2248, 60 L Ed 2d 824 (1979); *State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979). The question, then, is whether handcuffing defendant and placing him in the police car resulted in an arrest. The Supreme Court has held:

> "Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present. * * * [I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed

considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made." *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987).

The police initially had reasonable suspicion that defendant was armed with a gun and in the course of a possible kidnapping. That suspicion entitled them to take reasonable precautions for their safety. However, once defendant was taken out of the car and frisked, any concern about immediate danger dissipated, especially in light of Olsen's description of defendant as "polite and cooperative." On these facts, we find that, when defendant was handcuffed and placed in the patrol car, he was arrested within the meaning of ORS 133.005(1).

■ ■ A police officer may arrest someone without a warrant if he has probable cause to believe that the person has committed an offense. ORS 133.310(1). Probable cause arises if there is a substantial objective basis for believing it more likely than not that the person has committed an offense. ORS 131.005(11). In addition, the officer must have a subjective belief that the person has committed an offense. *State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986); *State v. Hayes,* 99 Or App 322, 325, 781 P2d 1251 (1989).

The police did not have a substantial objective basis for believing that defendant had committed an offense. The informer's tip was based on a fleeting observation and tentatively stated that someone was "possibly" taking another person from or putting a person into a car at gunpoint. Although such a report can give rise to a reasonable suspicion, it does not reach the level of certainty required to establish probable cause. The probability that a crime had been committed was rendered even more unlikely when neither of the women who emerged from the vehicle gave any indication of a crime. Neither did the police have a subjective belief that defendant had committed an offense. Olsen testified that he was still investigating when defendant was handcuffed and placed in the patrol car and that he did not have probable cause to believe that defendant had committed a crime.

■ We conclude that the arrest was unlawful. The state argues that our conclusion does not require suppression of defendant's statements, because they were not obtained by

exploitation of the illegal arrest. We disagree. Defendant was unlawfully arrested and questioned while handcuffed in the back of a police car. His statements were tainted, and they and any evidence seized as a result of them should have been suppressed.

Reversed and remanded for a new trial.